Rehearing granted, April 20, 2005

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-4100**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PRINCIBE LAGUERRE, a/k/a Big Man,

Defendant - Appellant.

---

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.   James C. Turk, Senior District Judge.  (CR-02-30098)

---

Argued:  October 29, 2004                 Decided:  May 12, 2005

---

Before WILKINS, Chief Judge, and TRAXLER and GREGORY, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

**ARGUED:** Aaron Lee Cook, Harrisonburg, Virginia, for Appellant. Timothy J. Heaphy, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

On October 30, 2003, a jury convicted Appellant Principe Laguerre ("Laguerre"), a/k/a "Big Man," of conspiracy to distribute and possession with intent to distribute over fifty grams of cocaine base and five kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1), 846 (2000). Laguerre challenges his conviction and his subsequent sentence. We agree that the district court erred in admitting certain exhibits concerning telephone transactions without the proper notice required by the Federal Rules of Evidence; but we find the error harmless and thus affirm his conviction. However, consistent with United States v. Hughes, 401 F.3d 540 (4th Cir. 2005), our recently published opinion giving guidance on the application of United States v. Booker, 125 S. Ct. 738 (2005), we find plain error in sentencing, exercise our discretion to notice the error, vacate the sentence, and remand to the district court for resentencing.

I.

Laguerre first came to the attention of the Virginia State Police after they apprehended Barbara Ferguson ("Ferguson") for drug trafficking when she sold drugs to undercover agents. Ferguson became a confidential informant ("CI") and engaged in four transactions with Laguerre that led to his arrest. Ferguson facilitated the transactions by calling Laguerre and other dealers

2

on their cell phones from her cell phone.  These conversations were recorded.

During Laguerre's three-day trial, several alleged co-conspirators, as well Laguerre himself, testified.  These co-conspirators and Laguerre used cell phones to communicate with one another.  The Government also presented testimony from Nate Adams ("Adams"), a Drug Enforcement Agency ("DEA") Intelligence Analyst, who testified that he gathered subscriber information and toll records regarding certain cell phone numbers provided to him by the DEA Special Agent involved in the investigation.[1]  Ferguson had provided some of the cell phone numbers for the investigation.

From the toll records of the original cell phone numbers, Adams obtained toll records and subscriber information for numbers that frequently contacted the original numbers.  He did this by sending administrative subpoenas out to Sprint, the service provider for these numbers.[2]  Adams testified that he then took the information from the administrative subpoenas and entered it into a database of phone numbers.  Adams then began to testify concerning two summary charts that he had prepared using the toll

_____

[1]Toll records consist of information on every phone number called from a particular cell phone number.  Subscriber information consists of the name and address of the subscriber from the record on file with the service provider.

[2]Adams found out that Sprint was the service provider for the numbers through a database called the National Subpoena Registry.

3

records. One chart showed the volume of calls between Laguerre and other alleged co-conspirators and used photos of each person with Laguerre's photo enlarged and outlined in red in the center of the other photographs. J.A. 133, 145-A. The other chart showed the volume of calls between Laguerre and Ferguson on the dates of the four charged transactions. Id. at 139, 145-B.

During Adams's testimony, Laguerre's counsel made several objections to the use of toll record information from the administrative subpoenas and to the summary charts. The court, however, overruled each objection and allowed the admission of both charts. Laguerre thereafter moved for judgment of acquittal by challenging the admission of the summary charts but the judge denied this motion.

On January 21, 2004, the judge sentenced him, pursuant to the U.S. Sentencing Guidelines, to 360 months of incarceration. Laguerre filed this timely notice of appeal on January 30, 2004.


II.

We review the admission of evidence for abuse of discretion. United States v. Weaver, 282 F.3d 302, 313 (4th Cir. 2002). However, evidentiary rulings are subject to further harmless error review. Id. at 313-14. Under such review, a ruling will be found harmless if we are able to conclude, "'with fair assurance, after pondering all that happened without stripping the erroneous action

4

from the whole, that the judgment was not substantially swayed by the error.'"  Id. at 314 (quoting United States v. Brooks, 111 F.3d 365, 371 (4th Cir. 1997)).

The interaction of Federal Rules of Evidence 803(6), 902(11) and 1006 is at issue in this case.  Here, the Government sought to take toll records excepted from the hearsay rule under Rule 803(6) and authenticated under Rule 902(11) and summarize them into a chart pursuant to Rule 1006.  Laguerre argues that the charts were built on inadmissible hearsay and unauthenticated evidence, that the Government failed to give the notice required by Rule 902(11), and that the Government failed to provide an opportunity to inspect the underlying documentation for the charts pursuant to Rule 1006.

A.

Rule 803(6) is an exception to the hearsay rule for business records that permits their introduction as long as they satisfy certain requirements.  See Fed. R. Evid. 803(6).  Rule 803(6) references Rule 902(11), which permits authentication of these records by certification of the custodian or other qualified person, and thus eliminates the need for foundation testimony at trial.  See Fed. R. Evid. 902(11).  However a notice requirement exists when offering a business record by certification.  Id.  The proponent of the evidence must give the opposing party notice of the intention to offer that evidence, and must make the record and

the declaration available for inspection, "sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them." Id. This notice is "intended to give the opponent of the evidence a full opportunity to test the adequacy of the foundation set forth in the declaration." Fed. R. Evid. 902(11) advisory committee's note to 2000 amendments.

Rule 1006 permits the admission of charts into evidence as a surrogate for underlying voluminous records that would otherwise be admissible into evidence. United States v. Janati, 374 F.3d 263, 272 (4th Cir. 2004). Its purpose is to reduce the volume of written documents that are introduced into evidence by allowing in evidence accurate derivatives. Id. (citing United States v. Bakker, 925 F.2d 728, 736 (4th Cir. 1991)). While Rule 1006 does not require that the underlying documents actually be introduced into evidence, they must be available to the opposing party for examination and copying at a reasonable time and place. Id. at 273.

B.

Toll records clearly qualify as business records under Rule 803(6). See United States v. Wills, 346 F.3d 476, 490 (4th Cir. 2003) (cell phone records admissible under business records exception). However, as the Government conceded during oral argument, some of the records were based on hearsay because some of

6

the original phone numbers from which the records were produced were obtained by Adams through other government agents or through various computer databases.[3] Additionally, for the toll records to be admissible under Rule 803(6), they must be authenticated pursuant to Rule 902(11), which requires both that written notice be given and that the records be available in advance of their admission into evidence. The Government did not give Laguerre written notice of its intention to use the toll records and thus they were not properly authenticated.[4]

Similarly, the Government did not make the toll records available for examination or copying pursuant to Rule 1006. In addressing Rule 1006, we have repeatedly noted that "it does require that the documents be made available to the opposing party for examination and copying at a reasonable time and place." Janati, 374 F.3d at 273; Bakker, 925 F.2d at 737; United States v. Strissel, 920 F.2d 1162, 1164 (4th Cir. 1990).

---

[3]The rest of the original phone numbers came into evidence through the testimony of Ferguson, who had personal knowledge of calling these numbers, and thus were not hearsay.

[4]While the Government argues that defense counsel had access to these records through the Government's "open file policy," Laguerre's counsel states that the records were not in the open file. Without any evidence showing that the records were in the open file, the court must assume that they were not. Moreover, the Government did not provide the proper written notice.

Despite these errors, under the harmless error standard of review, the court must uphold an erroneous evidentiary ruling if we conclude "after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Weaver, 282 F.3d at 314. Here, Ferguson, the CI, testified against Laguerre concerning the drug transactions and several of Laguerre's co-conspirators also testified against him. While the charts visually represented the conspiracy to the jury, the testimony of Ferguson and the co-conspirators established its existence. Therefore, we find that the judgment was not substantially swayed by the error in light of the Government's presentation of ample other evidence of Laguerre's guilt.

## III.

Laguerre also presents a Sixth Amendment challenge under Booker. The jury found Laguerre guilty of conspiracy to distribute and possession with intent to distribute over fifty grams of cocaine base and five kilograms or more of cocaine hydrochloride.[5]

_____

[5]We note that while the superseding indictment charged Laguerre with one count of conspiracy to distribute and possession with intent to distribute over fifty grams of cocaine base and five kilograms or more of cocaine hydrochloride, J.A. 23, and the Judgment in a Criminal Case states that Laguerre was found guilty of this count, id. at 147, the jury's verdict form contains a discrepancy. Specifically, the jury's verdict form states that the

At sentencing, the district court, who used the recommendation of the Presentence Investigation Report as to drug amount, found Laguerre responsible for 1.5 kilograms of cocaine base (more than the amount necessarily found by the jury's verdict), which yielded a base level offense of 38. The district court then added three (3) points for Laguerre's role in the offense and found the total offense level to be 41. The enhancements to Laguerre's sentence were based on facts found by the district court, not the jury. With these enhancements, the district court sentenced Laguerre to 360 months.

As Laguerre has raised his <u>Booker</u> objection for the first time on appeal, we review this issue under plain error analysis, which our recent decision in <u>Hughes</u> governs. Under <u>Hughes</u>, the district court plainly erred in imposing a sentence on Laguerre that exceeded the maximum allowed under the guidelines based on the facts found by the jury alone. <u>Hughes</u>, 401 F.3d at 547. Thus, we vacate Laguerre's sentence and remand for resentencing "consistent with the remedial scheme set forth in Justice Breyer's opinion for the Court in <u>Booker</u>." <u>Id.</u> at 544.

---

jury found Laguerre guilty of conspiracy to distribute and possession with intent to distribute over fifty grams or more of cocaine base and <u>less than five kilograms but more than five hundred grams of cocaine hydrochloride</u>. Record on Appeal, Doc. Entry # 65.

IV.

For the reasons set forth above, the judgment of the district court is

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED.
